UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPINE AND NEUROSURGERY INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>OXFORD HEALTH INSURANCE INC, et al.,<br><br>Defendants. | Case No. 19-cv-03533-DMR<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 11 |

Defendants Oxford Health Insurance Inc. ("Oxford") and United Healthcare Insurance Company ("UHC") move to dismiss Plaintiff California Spine and Neurosurgery Institute's complaint. [Docket Nos. 11 ("Mot"), 17 ("Reply").] Plaintiff timely opposed. [Docket No. 16 ("Opp.").] The court held a hearing on September 26, 2019.

Having considered the parties' submissions and oral arguments, the court denies the motion to dismiss.

## I. BACKGROUND

The following facts come from Plaintiff's initial complaint.[1] Plaintiff is a private surgical practice that provides complex surgical services at El Camino Hospital in Mountain View. [Docket No. 1-1, Ex. A ("Compl.") ¶ 1.] UHC is a managed care company that administers health insurance policies. *Id.* ¶ 5. Oxford is a wholly-owned subsidiary of UHC. *Id.* ¶¶ 4-5; Mot. at 6. Plaintiff is an out-of-network provider in relation to Defendants. Compl. ¶ 8.

A nonparty patient identified by his initials, R.N., is insured under a health insurance policy administered by Defendants. Compl. ¶ 6. R.N. is a middle-aged man who presented to Plaintiff for

---

[1] The court announced its ruling at the hearing following oral argument. In order to keep the case moving, the court stated that it would issue a written ruling to explain its reasoning but instructed Plaintiff to file an amended complaint to clarify a particular point explained below in footnote 5. Plaintiff filed an amended complaint which Defendants have now answered.

treatment of severe neck and bilateral upper extremity pain. *Id.* ¶ 7. After conservative management such as physical therapy and epidural steroid injections failed to work, Plaintiff advised R.N. that "neurosurgical intervention was warranted." *Id.* ¶ 7. Plaintiff alleges that on November 21, 2018, its staff contacted UHC by phone to verify the details of R.N.'s insurance coverage and benefits. *Id.* ¶ 9. According to Plaintiff, a representative of UHC informed Plaintiff's staff that "UHC's payment for covered care rendered to R.N. by out-of-network providers would be based on 'usual and customary' rates."[2] *Id.* Plaintiff's staff recorded this information on a verification form and noted that a UHC employee named "Cheryl" had supplied the information. *Id.*

Prior to performing surgery on R.N., Plaintiff sought approval of coverage from Oxford. Compl. ¶ 11. On November 29, 2018, Oxford allegedly sent Plaintiff a letter approving back surgery for R.N. and included various Current Procedural Terminology ("CPT") service codes as eligible for coverage. *Id.* Plaintiff's principle physician, Adebukola Onibokun, M.D., performed the surgery on R.N. on December 17, 2018. *Id.* ¶¶ 1, 12. Plaintiff billed Defendants for the surgery using the same CPT service codes that Oxford had previously approved. *Id.* Dr. Onibokun's charges for the surgery were $147,000.00, which Plaintiff alleges are his standard rates for such services. *Id.* Defendants paid Plaintiff a total of $7,911.24 for the surgery. *Id.* ¶ 14. Plaintiff alleges that this amount is "far below even the average rates for such services in Plaintiff's geographic area," and did not amount to the "usual and customary" ("UCR") rates Defendants had promised. *Id.* ¶¶ 14-15.

Plaintiff now brings claims for relief based on the equitable theories of promissory estoppel and quantum meruit. Defendants move to dismiss both claims. Jurisdiction is based on diversity of the parties.

## II. LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When

---

[2] Plaintiff avers that "usual and customary" is a "term of art in the healthcare and insurance industry and refers to the ordinary market rates charged in a geographic area for similar medical services provided under similar circumstances by providers with similar training and expertise." Compl. ¶ 10.

2

reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002). The court need not accept as true allegations that contradict facts that may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III. DISCUSSION

#### A. Promissory Estoppel

Promissory estoppel is "a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced." *Crane v. Fargo*, No. 13-cv-01932 KAW, 2014 WL 1285177, at *4 (N.D. Cal. Mar. 24, 2014) (quoting *Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000))

(further citations omitted). The elements of a promissory estoppel claim are "(1) a clear and unambiguous promise by the promisor, and (2) reasonable, foreseeable and detrimental reliance by the promisee." *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 929 (2013). In this case, Plaintiff alleges that Defendants made a promise to pay for the surgical services Plaintiff provided to R.N., as evidenced by the phone verification of member eligibility and the prior authorization for surgery. Defendants argue that these alleged actions do not constitute a "clear and unambiguous promise" to pay Plaintiff the UCR for the surgery and therefore Plaintiff cannot state a claim for promissory estoppel. Mot. at 10.

Defendants' arguments are not persuasive. They rely primarily on two cases, *Cedars Sinai Medical Center v. Mid-West Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002 (C.D. Cal. 2000) and *Cmty. Hosp. of the Monterey Peninsula v. Aetna Life Ins. Co.*, 119 F. Supp. 3d 1042 (N.D. Cal. 2015) ("*CHOMP*"). In *Cedars Sinai*, a health care provider called an insurance company to verify a patient's insurance coverage. *Id.* at 1006. The insurance representative gave the provider details of the patient's coverage, including the effective date of coverage, that premiums were current, and that out-of-network benefits were payable at a rate of 60% of the reasonable and customary charge. *Id.* at 1007. After the provider billed the patient's insurance, however, the insurer learned that the patient had been dishonest about his medical history and rescinded his coverage under the terms of the contract. *Id.* The insurer then denied all claims relating to the treatment provided to the patient. *Id.* The insurer brought several claims, including a breach of contract claim under the theory that the verification of coverage resulted in a binding contract to pay for covered treatment. *Id.* at 1008. The court held that verification of coverage alone did not create a binding contract because the undisputed facts did not establish that the insurer intended to form a contract during the phone call. *Id.*

As Plaintiff notes, this case and others relied on by Defendants examine a breach of contract claim rather than a promissory estoppel theory. There may be some overlap for these theories,[3] but

---

[3] Courts analyzing factually similar cases under a breach of implied contract theory have discussed contract formation in terms of a "promise to pay." *See, e.g.*, *Cedars Sinai*, 118 F. Supp. 2d at 1008; *California Spine & Neurosurgery Inst. v. United Healthcare Servs., Inc.*, 2018 WL 6074567, at \*3 (C.D. Cal. June 28, 2018) ("*CSNI*") (examining the defendant's promise to pay under both breach of contract and promissory estoppel claims). One element of a promissory estoppel claim is whether

4

even if a breach of contract analysis is relevant here, *Cedars Sinai* is distinguishable. *Cedars Sinai* was decided at summary judgment, and the court looked at expert testimony about customs within the medical insurance industry to conclude that verification of eligibility alone does not constitute a promise to pay. 118 F. Supp. at 1008. In this case, there is both a verification of coverage and a letter authorizing services. At the pleadings stage, the parties have not yet had the opportunity to develop evidence of industry custom about whether Defendants' authorization of services coupled with a verification call constitutes a promise to pay.[4] Accordingly, *Cedars Sinai* is not applicable here.

Defendants also rely on *CHOMP*, another breach of contract case. There, the insurer paid some amounts billed but denied the rest of the charges on the basis that they "exceed[ed] contract." *Id.* at 1046. The plaintiff hospital argued that the defendant insurer's verification of eligibility and prior authorization of treatment created an implied contract to pay the full amount charged. *Id.* at 1044-45. The court disagreed. It noted that the insurer had explicitly notified the plaintiff that the patient was an "out of network admit" and informed the plaintiff that it would be paid at an out-of-network rate. *Id.* at 1049. Accordingly, the court held that the plaintiff's "expectation of 100 percent payment of billed charges . . . is irreconcilable with the underlying evidence presented to the court." *Id.*

*CHOMP* does not support Defendants' position. In fact, the court in that case explicitly recognized that "an authorization call can constitute a promise to pay for the purposes of contract creation." 118 F. Supp. 2d 1002 (citing cases) (internal quotation marks omitted). The dispositive issue was *not* "whether there was a contract in place, but whether there is any genuine issue that full

---

a promise was made. Therefore, breach of contract cases may shed some light on how courts have analyzed an analogous principle under similar sets of facts.

[4] One court found that a verification of eligibility and an authorization together created a triable issue of fact as to whether the defendant insurer intended to form a contract. *See Regents of Univ. of California v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006). Like *Cedar Sinai*, *Regents* addressed a breach of contract theory at summary judgment, which further supports the court's holding that the "promise to pay" inquiry is premature at the pleadings stage. *See also Enloe Med. Ctr. v. Principal Life Ins. Co.*, 2011 WL 6396517, at *7 (E.D. Cal. Dec. 20, 2011) (denying summary judgment on a breach of contract claim because the "opaque record" before the court created a triable issue as to whether the defendant made a promise to pay).

5

payment was expected under the contract." *Id.* at 1049. In this case, by contrast, Plaintiff is not seeking full payment for all charges but rather argues that Defendants promised to pay the UCR for the services it provided. In addition, *CHOMP* was decided at summary judgment and the court reviewed the evidentiary record in determining that the plaintiff's expectation of full payment was unreasonable. Here, nothing in Plaintiff's allegations contradicts its claim that it expected Defendants to pay the UCR for the services it provided.[5] In sum, neither *Cedars Sinai* nor *CHOMP* are procedurally or factually similar to the present case.

*CSNI* is more persuasive. That case also involved Plaintiff and Defendant UHS. There, Plaintiff alleged that UHS promised to pay 75% of the UCR until the patient's out-of-pocket ("OOP") maximum was met, and then Plaintiff would be paid 100% of the UCR. 2018 WL 6074567, at *1. Plaintiff further alleged that UHS underpaid the claims Plaintiff submitted after it performed services for the patient. *Id.* Subsequently, Plaintiff brought claims of relief for breach of oral contract, promissory estoppel, and quantum meruit. With respect to the promissory estoppel claim, UHS argued that Plaintiff did not allege a "sufficiently clear and unambiguous promise" because "a promise cannot be clear when it is missing the essential term of price." *Id.* at *4. Plaintiff pointed out that UHS itself uses the UCR rate for the payment of claims. 2018 WL 6074567, at *5. The court noted that UHS "does not argue that it lacks an understanding of the term 'UCR rate,' nor that it understands that term to mean something different than what Plaintiff understands it to mean . . ." *Id.* Accordingly, the court held that "a promise of payment at the UCR rate is sufficiently clear and definite" to establish the basis for a promissory estoppel claim. *Id.* at *4.

Defendants distinguish *CSNI* on the basis that the alleged promise in that case was a specific percentage of the UCR; namely, 75% of the UCR until the patient's OOP maximum was met, and then 100% of the UCR thereafter. Mot. at 2. Here, by contrast, the complaint does not "specify any

---

[5] At the hearing, Defendants argued that the authorization letter made it clear that the amount paid would be based on an out-of-network plan and that Plaintiff would not receive the full amount charged. The court agreed that the complaint did not explicitly acknowledge that Defendants' payment would be subject to certain contingencies, such as the patient's continued eligibility for benefits and the actual services performed, among others. The court ordered Plaintiff to file an amended complaint clarifying that its claim is not based on Defendants' failure to pay 100% of the charges billed. Plaintiff filed its amended complaint on October 3, 2019 (Docket No. 28) and Defendants filed their answer on October 17, 2019 (Docket No. 29).

6

facts indicating Defendants promised to pay any particular percentage of a UCR rate, what the method of calculating the amount paid would be, or what the actual amount of payment would be." *Id.* at 3. This argument lacks merit. *CSNI* did not determine the specific UCR that applied, nor did it decide the final amount of payment owed. Here, Defendants do not explain how a promise to pay Plaintiff at an unspecified UCR is less definite than the promise at issue in CSNI, which was to pay 75% of an unspecified UCR. Either requires a calculation based on the "factors enumerated in the regulations of which Defendants are aware," evidence of which cannot be considered at the motion to dismiss stage. *See* Mot. at 4. Accordingly, the reasoning in *CSNI* appears to apply with equal force here.

The court's analysis in *Summit Estate, Inc. v. Cigna Healthcare of California, Inc.*, No. 17-cv-03871-LHK, 2017 WL 4517111 (N.D. Cal. Oct. 10, 2017) is also informative. There, the defendant insurers allegedly represented to the plaintiff provider that the relevant insurance policies "provided for reimbursement . . . at the UCR." *Id.* at *6. The court held that the plaintiff had not alleged a clear and unambiguous promise by the defendants sufficient to support a promissory estoppel claim. *Id.* at *6. Importantly, however, the court reached this conclusion because the alleged actions were "merely representations about the terms of certain insurance policies" and not a "clear and unambiguous promise by Defendants to pay for . . . services at the UCR." *Id.* In this case, by contrast, Defendants' staff allegedly informed Plaintiff that "UHC's payment for covered care rendered to R.N. by out-of-network providers would be based on 'usual and customary' rates." Compl. ¶ 9. This representation amounts to more than a description of an insurance policy's terms; it is an explicit statement that UHC will pay for covered out-of-network care at a UCR.

In sum, Plaintiff has sufficiently alleged that Defendants made a clear and unambiguous promise to pay Plaintiff the UCR for the services it rendered to R.N. Defendants' motion to dismiss Plaintiff's promissory estoppel claim is denied.

### B.     Quantum Meruit

"Quantum meruit . . . is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Entm't Grp.*

*Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992). "[I]n order to recover under a quantum meruit theory, a plaintiff must establish both that he or she was acting pursuant to either an express or implied request for such services from the defendant and that the services rendered were intended to and did benefit the defendant." *Day v. Alta Bates Med. Ctr.*, 98 Cal. App. 4th 243, 248 (2002). Defendants argue that Plaintiff's quantum meruit claim fails because it cannot show either that Defendants requested that Plaintiff perform services, or that the services Plaintiff rendered benefited Defendants.

### 1. Request for Services

Defendants assert that it was Plaintiff who initiated contact with Defendants, and so Plaintiff cannot plausibly allege that Defendants requested the medical services it rendered. Mot. at 14. Plaintiff contends that Defendants' multiple communications—specifically, the verification of benefits and a prior authorization of coverage—constitute a request for services that can sustain a claim for quantum meruit. Opp. at 6.

The caselaw appears to be split on whether communications such as the ones at issue here are enough to establish that a defendant insurer requested medical treatment. *CHOMP* concluded that "[i]n the health insurance context, it is the patient who first requests service in the form of treatment."[6] 119 F. Supp. 3d at 1051. *Cedars Sinai* came to a similar conclusion and held that it was the patient who "presented himself to the [provider] with the intention of acquiring treatment" and that the insurer did not request it. 118 F. Supp. 2d at 1013. As noted earlier, both cases were decided at summary judgment rather than on a motion to dismiss. Other courts have held that an insurer's pre-treatment communications may amount to a request for services from a provider, but that the ultimate determination requires a factual inquiry into the industry's standards. *See, e.g.*, *Regents*, 412 F. Supp. 2d at 1047 (holding that, "[w]ithout evidence of industry custom, the court is unable to conclude as a matter of law that the [defendant's] authorizations taken as a whole do not amount to a 'request' for treatment"); *Barlow Respiratory Hosp. v. CareFirst of Maryland, Inc.*,

---

[6] However, the court made this statement in granting summary judgment on the plaintiff's claim for common count-services, not on a quantum meruit claim. *Id.* at 1051. The defendant did not seek summary judgment on the plaintiff's quantum meruit claim; instead, it acknowledged that there were genuine issues of material fact precluding summary judgment on that issue. *Id.* at 1051, n. 56.

8

2014 WL 12573394, at *5 (C.D. Cal. June 24, 2014) (determining that it was premature on a motion to dismiss to determine whether an oral verification of eligibility and three written authorizations could constitute a request for services); *Long Beach Mem'l Med. Ctr. v. Blue Cross & Blue Shield of S.C.*, 2018 WL 5099703, at *5 (C.D. Cal. June 7, 2018) (refusing to conclude as a matter of law that the alleged communications were insufficient to show a request for services by an insurer).

The parties cite two cases where the court dismissed a quantum meruit claim at the pleadings stage on the basis that the defendant insurer did not request services. *See Summit Estate,* 2017 WL 4517111, at *11; *CSNI*, 2018 WL 6074567, at *2. In *Summit Estate*, the plaintiff health care provider contacted the defendant insurers to verify eligibility, and the defendants assured them they would pay for treatment at the UCR. 2017 WL 4517111, at *1. The court held that these pre-treatment communications were not enough to establish that the defendants requested the services:

> Even assuming that Defendants verified coverage and authorized Plaintiff to provide . . . services through these alleged representations, Plaintiffs have not alleged enough facts to plausibly suggest that Defendants *requested* Plaintiff to render those services because, as alleged in Plaintiff's complaint, Plaintiff initiated contact with Defendants to verify coverage and seek authorization.

*Id.* at *11. The court accordingly dismissed the quantum meruit claim. Similarly, in *CSNI*, the court dismissed the plaintiff's quantum meruit claim on the basis that a single verification call did not "represent[] an implied request for services." 2018 WL 6074567, at *2.

These cases are not persuasive on this point. Both of them rely on cases that were decided at summary judgment. *See Summit Estate*, 2017 WL 4517111, at *11; *CSNI*, 2018 WL 6074567, at *2. Neither case addressed whether it was appropriate to extend those analyses to a motion to dismiss. Nor did either case consider the statement in *Regents* that "evidence of industry custom" may be necessary to determine whether a defendant insurer's conduct amounts to a request for treatment. *See* 412 F. Supp. 2d at 1047. There may also be other evidence that could be considered at summary judgment, such as additional evidence about the specific content of the phone call or prior dealings between the parties.

Therefore, the court holds that it is premature to decide as a matter of law on the pleadings whether Defendants' conduct constituted a request for services from Plaintiff. Plaintiff has

9

adequately pleaded this element and may develop evidence to attempt to establish that the insurers' conduct in this case amounts to a request for treatment.

### 2. Benefit to UHC

Defendants argue that Plaintiff has not alleged that it conferred a benefit upon Defendants sufficient to state a claim for quantum meruit. Notably, Defendants do not cite a single authority for this argument in either their motion or reply. A cursory review of the caselaw reveals that courts generally have held that an insurer benefits from services provided to their insured patients. *See, e.g.*, *CSNI*, 2018 WL 6074567, at *3 (determining that the defendant insurer "received the benefit of having obligations to its insured discharged"); *Yazdi v. Aetna Life & Cas. (Bermuda) Ltd.*, No. 2018 WL 6443090, at *6 (C.D. Cal. Nov. 1, 2018) (finding that the insurance company "derived a benefit from the treatment" of its insured); *Regents*, 412 F. Supp. 2d at 1047 (holding that "the fact that [the insured] was the direct beneficiary of the medical treatment does not bar plaintiff's claim" against the insurer); *Barlow*, 2014 WL 12573394, at *5 (stating that the complaint "plausibly alleges that [the provider] conferred a benefit on [the insurer]"). Defendants do not explain why the reasoning in those cases does not apply here. Accordingly, the court holds that Plaintiff has sufficiently alleged that it conferred a benefit on Defendants.

Defendants' motion to dismiss Plaintiff's quantum meruit claim is denied.

## IV. CONCLUSION

For the reasons stated above, the court denies Defendants' motion to dismiss in its entirety.

**IT IS SO ORDERED.**

Dated: November 20, 2019



Judge Donna M. Ryu
United States Magistrate Judge